UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CYNTHIA VICTORIAN | : | DOCKET NO. 16-cv-1263 |
| VERSUS | : | JUDGE MINALDI |
| THE KANSAS CITY SOUTHERN RAILWAY COMPANY, ET AL | : | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

Before the court is a Motion to Remand and Motion for Attorney Fees filed by Cynthia Victorian ("plaintiff"). Doc. 6. The motion is opposed by defendants The Kansas City Southern Railway Company ("KCSR") and Troy Cunningham ("Cunningham"). For the following reasons, it is recommended that the Motion To Remand be GRANTED and the Motion for Attorney Fees be DENIED.

### I.
### BACKGROUND

Plaintiff filed suit in state court against KCSR, Cunningham, and Jason Lathaniel Ravia ("Ravia") alleging that she suffered injuries as a result of a collision between the vehicle she was driving and hi-rail vehicle owned by KCSR. The accident occurred where the railroad track intersect with High Hope Road in Sulphur, Louisiana. The hi-rail vehicle was operated by defendant Cunningham. Ravia, a co-worker, was riding as a passenger in the vehicle.

Defendants removed the case on the basis of diversity jurisdiction. They allege that the amount in controversy exceeds $75,000 and that plaintiff is completely diverse from all properly joined defendants. Plaintiff is a resident of Louisiana. Defendant KCSR is a Missouri corporation

with its principal place of business in Missouri. Cunningham is resident of Texas and Ravia is a resident of Louisiana. Defendants allege that defendant Ravia, whose citizenship destroys diversity, was improperly joined to defeat diversity jurisdiction. Doc. 1. Defendants contend that Ravia was a passenger in the hi-rail vehicle at the time of the accident and had no responsibility for its operation. Thus, they contend that there is no possibility of recovery against Ravia, his joinder in the suit is improper, and his citizenship should be ignored for diversity purposes.

Plaintiff's motion to remand claims that removal was improper because she has alleged valid claims against the nondiverse defendant Ravia.[1] Briefly, plaintiff contends that Ravia was employed as a roadway worker on the date of the accident and had a duty to act as a "lookout" and to assure the driver of the hi-rail vehicle was operating in a safe manner. Plaintiff contends that Ravia breached this duty by failing to warn and/or stop the driver when the hi-rail vehicle approached the intersection and the railroad barricade and warning lights were not activated. Doc. 6.

In opposition to the remand, defendants assert, inter alia, that if Ravia had any duty to act as a lookout his duty was fulfilled because the evidence indicates that the railroad barricades were lowered and the warning lights were activated prior to the accident. Thus, they contend that plaintiff has no possibility of recovery against Ravia and remand should be denied.

## II.
### LAW AND ANALYSIS

If removal is based on a claim that a nondiverse party has been improperly joined, then the removing party must establish either "(1) actual fraud in the pleading of jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the non[]diverse party in state court." *Davidson v. Georgia Pacific,* 819 F.3d 758, 765 (5th Cir. 2016)(citing *Mumfrey v. CVS Pharmacy,*

---
[1] Plaintiff does not contest that the amount in controversy is met.

*Inc.*, 719 F.3d 392, 401 (5th Cir. 2013)). Only the latter method is relevant here insofar as the removing defendants did not allege actual fraud in the pleading of jurisdictional facts. Thus, the relevant question is "whether the defendant[s] ha[ve] demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* (citing *Smallwood v. Ill. Cent. R.R.Co.*, 385 F.3d 568, 573 (5th Cir 2004)). "[T]here must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Ross v. CitiFinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003) (emphasis in original) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002); *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000); *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999)).

When determining whether a nondiverse defendant was improperly joined, the court must first look at the allegations contained in the complaint and determine if plaintiffs can survive a Rule 12(b)(6) challenge for failure to state a claim. *Davidson,* 819 F.3d at 765. If the allegations in the complaint satisfy 12(b)(6) but the complaint either misstates or omits "discrete facts that would determine the propriety of joinder … the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* (quoting *Smallwood,* 385 F.3d at 573). The trial court is vested with the discretion to determine whether or not piercing the pleadings is necessary. *Id.*

The burden of persuasion on a party asserting improper joinder is a "heavy one." *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 514 (5th Cir. 2009)(citing *Campbell v. Stone Ins., Inc.,* 509 F.3d 665, 669 (5th Cir. 2007)). All unchallenged factual allegations are evaluated

in the light most favorable to the plaintiff, resolving all contested issues of fact in the plaintiff's favor. *Davidson,* 819 F.3d at 765.

While we find that plaintiff's allegations in her petition against Ravia do sufficiently state a claim for relief and would otherwise survive a 12(b)(6) challenge, we nonetheless determine that there are omissions of fact in the petition which requires us to pierce the pleadings to determine if the joinder of Ravia was improper. Thus, our inquiry here is whether or not there is a reasonable basis to predict that plaintiff might be able to recover against Ravia.

In support of her motion to remand, plaintiff submits her sworn affidavit wherein she testified that on the date of the accident she was travelling the speed limit on High Hope Road as she approached the intersection with the railroad tracks. Doc. 6, att 2, p. 2. Plaintiff stated that the section of the railroad track visible to her was clear and the signal lights were not activated and the barricade was in the upright position. *Id.* She stated that as she neared the railroad tracks she could see the front bumper of the hi-rail vehicle. *Id.* at p. 3. The hi-rail vehicle was not stopping for her vehicle and was not sounding any siren or horn. *Id.* The railroad signal lights were not activated and the barricades were in the upright position. *Id.* Recognizing the emergency situation, plaintiff applied her brakes but her vehicle did not stop in time and a collision occurred between her vehicle and the hi-rail vehicle. *Id.*

Plaintiff also submits an affidavit of Alan J. Blackwell[2] who testified that he is familiar with railroad industry safety standards applicable to the work performed by railroad workers, the responsibilities of these workers, and the jobs and tasks performed by railroad roadway workers.

---

[2] According to his affidavit, Mr. Blackwell has 20 years of experience in the "Engineering Maintenance of Way Department of a Class 1 Railroad." Doc. 6, att. 4, p. 1. He has performed maintenance of way work, including track and safety inspections, supervised worker crews performing right of way maintenance work, provided managerial services for the Maintenance Department, studied, promulgated, implemented, and enforced safety rules particularly addressing the work of railroad roadway workers and machine operators, studied, applied, and ensured railroad compliance with federal regulations, and identified and corrected railroad deficiencies regarding safety and federal regulations. *Id.*

Doc. 6, att. 4, p. 1-2. He stated that the Federal Railroad Administration safety regulations, 49 C.F.R. § 214.7, define Cunningham and Ravia as "roadway workers" and the hi-rail vehicle they were working in as a "roadway maintenance machine." *Id.* at 3. He stated that according to 49 C.F.R. § 214.1, the Federal Railroad Administration regulations prescribe the minimum safety standards for the railroad workplace and KCSR can adopt or enforce additional or more stringent requirements. *Id.* at 2.

Blackwell, referring to the KCSR's Maintenance of Way and Signal Department On-Track Safety and Roadway Worker Rules, stated that roadway maintenance workers must maintain a lookout for unsafe conditions and must pay particular attention to public grade crossings. *Id.* at 3. He also stated that a roadway maintenance machine does not have the right of way when crossing roadways and that it must travel at a safe speed and be prepared to stop when approaching a public grade crossing. *Id.* at 4. He stated that according to KCSR's "CORE Safety Rules," which require that an employee redirect anyone performing an unsafe act to safe work practices, a roadway maintenance machine's co-roadway worker must stop the driver from operating the roadway maintenance machine unsafely. *Id.* at 6.

In deposition testimony submitted by plaintiff, Ravia acknowledged that as an occupant/passenger in a hi-rail vehicle, it is his responsibility to act as a lookout when approaching a grade crossing. Doc. 15, att. 2, p. 3. He testified that a hi-rail vehicle must stop at a grade crossing such as High Hope Road and blow its horn. *Id.* at 2. The operator or passenger must make sure the gate is down and that the roadway is clear of moving traffic before it can proceed. *Id.* Ravia also testified that if observes his co-worker, Cunningham, doing something wrong or unsafe, it is his responsibility to tell him to stop. *Id.* at 5.

Relying on the foregoing plaintiff argues that Ravia was negligent in failing to see and assure that the barricade and signal lights were activated as the hi-rail vehicle approached High Hope Road, in failing to warn Cunningham about the danger of proceeding across the roadway, and failing to require that Cunningham stop the hi-rail vehicle before crossing High Hope Road. Doc. 6, att. 1, p. 14. Plaintiff contends that Ravia failed to comply with KCSR's safety rule which required him to pay particular attention at public crossings. If he had done so, plaintiff argues, he would have noticed that the barricade and signal lights were not activated. Plaintiff also asserts that Ravia failed to comply with the safety rule which requires an employee to redirect anyone performing an unsafe act to safe work practices. If he had complied, Ravia was required to demand that Cunningham stop the hi-rail vehicle before the vehicle crossed the roadway. Both of these failures, according to plaintiff, were a direct cause of the accident. Thus, plaintiff maintains that she has asserted viable negligence claims against Ravia.

In opposing the motion to remand defendants argue that the barricade and signal lights were activated prior the hi-rail vehicle crossing High Hope Road. They submit an affidavit of Cunningham in which he stated that the hi-rail vehicle he was driving came to a complete stop before entering the roadway. Doc. 1, att. 2. He stated that he looked to see if the roadway was clear and he sounded the horn and continued to sound the horn as he proceeded to enter the roadway. *Id.* Cunningham stated that the hi-rail vehicle is equipped with a shunt that activated the crossing gate and crossing lights at the highway crossing. *Id.* He stated that the crossing gate was lowered and the crossing lights were activated as he slowly began driving across High Hope Road. *Id.*

Defendants also submit an affidavit of Randall Shoebroek, a signal inspector with KCSR. Doc. 11, att. 1. He stated that he went to the location of the accident and obtained data from a data

recorder box located in the crossing signal bungalow at the High Hope Road crossing. *Id.* He downloaded all data from August 18, 2015 (the date of the accident) beginning at 12:00 noon until 12:00 noon on August 19, 2015. *Id.* Briefly, his testimony indicates that the crossing gate was lowering or in a down position for a total of approximately 18 seconds and the crossing bell was sounding for 21 seconds in the time frame surrounding the accident. *Id.*

In his deposition Ravia testified that the hi-rail vehicle came to a complete stop at the crossing, the crossing gate was down, the lights were flashing, and the bell was ringing. Doc. 23, att. 1. He stated that he looked to the west and told Cunningham that his side was clear. *Id.* At that point, Ravia stated that Cunningham proceeded slowly through the crossing while blowing the horn. *Id.*

Defendants argue that since the testimony indicates that the hi-rail vehicle came to a complete stop, the crossing gate was lowered, lights were flashing, and the horn was sounding, Ravia fulfilled any responsibility he had to act as a lookout or to stop Cunningham from performing an unsafe act. Thus, they contend that plaintiff has no possibility of recovery against Ravia.

In reply, plaintiff maintains that it is inconclusive if the data from the data recorder box was actually from the time immediately preceding the accident or if it is evidence of a manual activation occurring after the accident took place. Plaintiff argues that the data produced by defendants could support a finding that the crossing gate and lights were manually activated by KCSR employees. The data, according to plaintiff, shows that the gate and lights were activated five times during the 24 hour time frame. The first activation (the one associated with the accident) shows that the gate was down for 7 seconds. Other documented activations show the gate down for 5 minutes, 11 seconds, 2 minutes, and 2 minutes. Plaintiff submits that the 7 second and 11 second activations were manual activations. In other words, plaintiff argues that the hi-rail

workers may have briefly activated the equipment after the accident (the 7 second activation) and the KCSR supervisor may have activated the equipment when he went out after the accident (the 11 second activation).

Plaintiff maintains that the gates and lights were not activated at the time of the accident and that the recorder box data is not associated with the accident. Thus, she maintains that defendants have failed to prove that there is no possibility of recovery against Ravia and remand is warranted.

In a case such as the one before the court where crucial facts are in dispute, we must resolve all contested issues of fact in the plaintiff's favor. *Davidson,* 819 F.3d at 765. While we do not determine whether plaintiff will actually or even probably prevail on the merits in this case, we must conclude whether there is a possibility that plaintiff might do so. *Id.* Here, viewing the facts in the light most favorable to plaintiff, we find that defendants have failed to prove that there is no possibility that plaintiff can recover against the nondiverse defendant Ravia. For these reasons, we recommend that the Motion to Remand be GRANTED.

The decision to grant or deny attorney's fees is within the discretion of the court and an award of such fees and costs is not automatic under 28 U.S.C. § 1447(c). *Valdes v. Wal-Mart Stores, Inc.,* 199 F.3d 290, 292 (5th Cir.2000). The Fifth Circuit has stated that attorney's fees "should only be awarded if the removing defendant lacked 'objectively reasonable grounds to believe the removal was legally proper.'" *Hornbuckle v State Farm Lloyds*, 385 F.3d 538 (5th Cir.2004) (citing *Valdes,* 199 F.3d at 293). Finding an objectively reasonable basis for seeking removal, it is recommended that plaintiff's Motion for Attorney Fees be DENIED.

# III.
## CONCLUSION

For the reasons stated herein, it is RECOMMENDED that plaintiffs' Motion to Remand [doc.6] be GRANTED.

IT IS FURTHER RECOMMENDED that plaintiff's Motion for Attorney's Fees [doc. 6] be DENIED.

Under the provisions of 28 U.S.C. §636 and Fed.R.Civ.Proc. 72, parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**

THUS DONE AND SIGNED in Chambers this 26th day of April, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE